AUGUST CORNET, Respondent, *vs.* HENRY BERTELSMANN, *et al.*, Appellants.

1. *Vendor's Lien—Suit to enforce as against subsequent encumbrancer—Surplus proceeds—Notice—Admissions—What proof as to necessary, in order to divest title.*—In suit to enforce a vendor's lien against a subsequent mortgage of the land by the purchaser, *held*, 1st. Where the land is sold to satisfy the lien, the surplus proceeds, if any, should be decreed to pay off the debt secured by the deed. 2d. Where the grantee in the deed of trust has no notice of the lien, he will hold as against it. 3d. In such proceeding a decree may be given for plaintiff on the uncorroborated testimony of a single witness, the chancellor deciding on the weight and credibility of the testimony. The old chancery rule as to the measure of evidence in cases of that description under the present system of practice, no longer prevails. But where the proof consists of oral admissions it should always be received with the greatest caution. And in a case where the mortgagor has purchased years before the date of his encumbrance, and is in possession under a recorded deed, and plaintiff meanwhile has made no attempt to give notice of his vendor's lien, and the admissions were made in a loose conversation had long previously, and the testimony regarding them is vague and uncertain, and positively denied, and not corroborated by clear and unequivocal proof, the chancellor will not interpose. The rule discarding such testimony is based, not on the lack of credibility in the witness, but on the necessary vagueness and uncertainty of his memory. 4th. Where actual notice to the encumbrancer is required, knowledge of that fact or of facts which will necessarily lead to its discovery, must be brought home to him.

2. *Practice, civil—Chancery—Evidence—Review of by Supreme Court.*—In chancery cases where the decision in the court below appears to be plainly erroneous, the Supreme court will not hesitate to interfere.

*Appeal from Franklin County Circuit Court.*

*J. C. Kiskaddon,* for Appellants.

¶ A subsequent purchaser of the legal title to lands with actual notice of a subsisting vendor's lien thereon, without doubt takes no greater title to the land than his vendee had. But the evidence of the notice must be clear and undoubted, amounting in effect to evidence, that knowing of the prior incumbrance the vendee took the conveyance with the intent to defraud the owner of the lien. (Ad. Doc. Eq., 164; Sto. Eq. Jur., § 398; Wyatt vs. Barrell, 19 Ves., 435; Forest vs. Moorman, 2 Carter, [Ind.] 17; Fagg vs. Mann, 2 Sumn., 486; Hine vs. Dodd, 2 Atk., 276.) And the notice must be

given not only by some parties in interest, but during the course of the same transaction by which the subsequent purchaser acquired the legal title. (2 Sug. Vend., 7 ed., 538, top of page.)

The testimony as to loose conversations or confessions of the party has but little weight as against his solemn denial under oath. (Flagg vs. Mann, *supra* ; Forest vs. Moorman, *supra* ; Jallard vs. Steinbride, 3 Ves., 478; Jackson vs. Given, 8 Johns., 137; Barnhart vs. Greenshiceas, 28 Eng. L & E., 77.)

Defendant was a *bona fide* purchaser for a valuable consideration without notice of the lien, and takes the title to the property discharged of the lien. (Webb vs. Robinson, 14 Geo., 216; Fish. Mort., 297, and cases cited.) And a mortgagee is deemed a purchaser. (2 Hill Mort., 227; Fisher vs. Thayer, 25 Wend., 399.)

*Henry Flanagan*, for Respondent.

I. The evidence is amply sufficient to support the decree. Even under our former system of chancery practice, when the sworn answer, denying the case made by the bill, stood as the testimony of one witness, the evidence would warrant the decree. Wilborn's testimony is supported by strong corroborating circumstances, and is only contradicted by the defendant. (East India Co. vs. McDonald, 9 Ves., 275; Menifee vs. Menifee. 3 Eng. [Ark.], 9; Appleton vs. Harton, 25 Me., 23.)

II. Any circumstances which may give a turn to the balance are sufficient in support of the testimony of a single witness. (Gresley's Eqr. Ev., 4; Dunham vs. Gates, 1 Hoff. Ch. R., 189: Gould vs. Williamson, 21 Me., 273; Brown vs. Brown, 10 Yerg., 84; Pierson vs. Catlin, 3 Tenn., 272; Long vs. White's Adm'r, 5 J. J Marsh., 228.)

III. Under our present system of practice it is for the court to determine what value shall be attached to the evidence of the respective witnesses, without being governed by any previous decision in equity on the subject. (2 Dan. Ch. Pr., 3 Am. ed., 844; Graves vs. Alden, 13 Ia., 873; Walton vs. Walton, 17 Mo., 376.)

IV. The defendant set up new matter in defense, namely, that he was a *bona fide* purchaser without notice. The burden of proof devolved upon him. (Walton vs. Walton, *supra*.)

V. The decree is justified, and well supported by the evidence. The notice, as proved by the plaintiff, was communicated by the vendor to the vendee, a short time before the execution of the deed. (2 Sug. Vend. Purch., 7 Am. ed., 538, *et seq*.)

VORIES, Judge, delivered the opinion of the court.

This action was originally commenced on the 12th day of December, 1870, against the defendant Bertelsmann alone. The defendants Brinker and Sullentrup afterwards appeared, and were made defendants to the action on their own motion.

The action was to recover the amount due by a promissory note executed by defendant Bertelsmann to plaintiff, bearing date August 4th, 1870, for the payment of $654.20, sixty days after date, with interest at the rate of ten per cent. per annum, and to enforce a vendor's lien against certain real estate in the petition described, for the purpose of the satisfaction of the judgment recovered.

The defendant Bertelsmann made no answer. The defendants Brinker and Sullentrup answered, denying the allegations of the plaintiff's petition, and also setting up as a further defense, that on the 31st day of August, 1870, the defendant Bertelsmann executed his deed of trust, conveying to defendant Sullentrup in trust, for the benefit of defendant Brinker, to secure certain indebtedness of Bertelsmann to Brinker, the lot or tract of land named in the petition, and against which plaintiff seeks to enforce a vendor's lien ; that said deed of trust was duly acknowledged and recorded before the commencement of plaintiff's action ; that defendants had no notice of plaintiff's supposed lien on said land at the time of the execution and recording of the deed of trust, or at the time of the accruing of the indebtedness which the deed of trust was executed to secure; that at said time it appeared by the records of said county, that said Bertelsmann was the absolute owner in fee of said land, and which appeared to be

unincumbered. They claim to occupy the position of innocent purchasers, without notice, for value, and ask that their rights may be protected and enforced as such.

The plaintiff replied, denying the facts set up by the answer, and asserting that defendants had notice of the plaintiff's lien for the purchase money of the land at the time of taking the deed of trust, etc.

The facts of the case which seem to be undisputed are about these : that on the 13th day of June, 1865, the plaintiff sold to defendant Bertelsmann the land named in the petition for the price or sum of $1,525, and at the same time executed and delivered to Bertelsmann a deed by which he conveyed said land to him absolutely; that said deed recited that the consideration had been paid, and the receipt thereof was acknowledged by the deed ; that the deed was duly acknowledged on the day of its execution, and recorded on the 10th day of July, 1865; that Bertelsmann had the possession of the premises from the purchase until the commencement of the suit; that at the time of the purchase of the land by Bertelsmann, he paid of the consideration the sum of $125, and that he afterwards paid one thousand dollars, and gave his note for the balance due; that on the 4th day of August, 1870, he gave a new note for the principal and interest then due, which is the note named in the petition.

It further appears, that on the 31st day of August, 1870, Bertelsmann executed and delivered a deed of trust by which he conveyed the same land sold to him by the plaintiff to William Sullentrup, as trustee, to secure the payment to defendant Brinker of several promissory notes in the deed described, executed by Bertelsmann to the said Brinker, for the aggregate sum of about five thousand dollars, as well as to save him harmless from liabilities as his surety on other obligations. This deed of trust was acknowledged and filed in the recorder's office for record on the 2d day of September, 1870.

The main, and I may say the only really controverted question between the parties, is, whether the said Brinker, at the

time of taking the deed of trust to secure his indebtedness for advances made to Bertelsmann, had notice that any amount remained due to plaintiff from Bertelsmann of the consideration to be paid for the land in question.

The court, after hearing the evidence, decided the case in favor of the plaintiff, and made a decree and judgment in his favor for $806.85, and ordered that the land named in the petition be sold, and that the proceeds be applied in payment of the amount of the judgment, and that if the amount for which the land was sold did not fully satisfy said judgment, the residue be levied of other lands and tenements or goods and chattels of the defendant Bertelsmann, and that an execution issue therefor, etc. The defendants in due time filed a motion for a re-hearing on the grounds: 1st, that the decree is against the law and against the evidence; 2d, that it is not shown by the evidence that defendant Brinker had notice that there was any of the purchase money unpaid on the property against which the lien is enforced; 3d, that the defendants were taken by surprise by the testimony of the witness Wilborn for plaintiff; 4th, that defendants had discovered new evidence by which they can impeach the veracity of said witness, of which they had no knowledge at the time of trial.

With this motion is filed the affidavit of one of the defendants in reference to the newly discovered evidence, but which with the view we have taken of the case need not be further noticed.

This motion being overruled the defendants excepted, and have appealed to this court.

The decree or judgment in this case is clearly improper. It wholly ignores the defendants Brinker and Sullentrup and their rights in the premises. It is first found that the defendant Henry Bertelsmann is indebted to the plaintiff by virtue of the promissory note sued on in the sum of $806.85, and judgment is rendered against said defendants therefor. It is then directed that said sum be levied of the lands named in the petition (describing the same) finding that the said

sum is purchase money therefor, and that plaintiff has a vendor's lien on the land, etc., and that the residue of said sum be levied of the other goods and chattels, lands and tenements of said defendant Bertelsmann, and that an execution issue in accordance with the decree.

No mention is made of the defendants Brinker and Sullentrup, or of their interest in the premises. Their rights are wholly ignored and undisposed of by the decree. Their rights under the deed of trust ought at least to have been preserved subject to the plaintiff's lien for his purchase money, even if his lien was properly found to be superior to the lien created by the deed of trust. The evidence shows that the land was sold by plaintiff for $1.525, five or six years before the date of the decree, and yet this land is ordered to be sold to pay eight hundred dollars of purchase money, and no provision made for the disposition of the surplus, provided the land should be sold for more than enough to pay the judgment. The decree ought at least to have permitted the defendant Brinker to redeem the land from the vendor's lien, or to have provided that if the land should sell for more than enough to pay the vendor's lien, the surplus should have been secured to Brinker to apply on the debts named in the deed of trust. For the foregoing reasons, if for no other, the judgment in this case must be reversed.

But inasmuch as the case will have to be re-tried in the Circuit Court, it is thought to be proper that we should express an opinion in reference to the merits of the controversy in this case. The only question discussed by the parties in this court, which goes to the merits of the case, is, whether the plaintiff has a right to enforce his vendor's lien against the land named in the petition, independent of any right that the defendants Brinker and Sullentrup may have, growing out of the deed of trust executed to them or for their benefit. And this depends on the question whether Brinker, at the time he gave credit to Bertelsmann and took the deed of trust, had notice of the fact that the purchase money had not been paid to plaintiff by Bertelsmann. The evidence

on the subject of notice to Brinker, that the purchase money was not all paid to Cornet, at the time of the execution and delivery of the deed of trust, is short, and will be here stated substantially as it appears in the bill of exceptions. One Martin Wilborn, a witness on the part of the plaintiff, stated as follows: "I lived with Bertelsmann five years; attended in the furniture store. Brinker is Bertelsmann's father-in-law. Bertelsmann told Brinker in February or March, 1870, that he was owing Cornet on that property. I did not hear the amount. He was telling Brinker the persons that he owed."

The witness also stated that Brinker was there frequently during the time that witness resided there, but that he did not recollect what was said in any conversation but the one.

On cross examination the witness stated that he was then about twenty years old; that he had just had a law suit with Bertelsmann, in which he was defeated, but that he was not unfriendly with him. It also appeared that there had been a previous trial of the case when Wilborn was not a witness. Upon being asked about the conversation detailed in his evidence in chief, the witness stated: "It will be two or three years next March since I heard Bertelsman and Brinker have the conversation I have detailed. I do not know which it will be, two or three years. * * * * Bertelsmann told Brinker about three years ago that he was owing Cornet, but did not say how much nor on what account. Bertelsmann said he would make it all right, that there would be no trouble about it, and I think Brinker said it was all right then."

Blackman, a witness for plaintiff, testified; "I had a conversation with defendant Brinker, two or three weeks after he had placed his trust deed from Bertelsmann on record, and in that conversation I told him that Bertelsmann owed Cornet a balance on the purchase money of that land. This was the first time I ever told anything about it, and he said he thought that Bertelsmann paid for the property when he bought it, four or five years before; that Bertelsmann had said it was paid for, and showed him the deed acknowledging

the receipt of the purchase money." This was all of the evidence produced by the plaintiff on the subject of notice.

The defendant Brinker was sworn on his own part, and testified positively that he never knew Bertelsmann owed Cornet anything on account of the purchase of the real estate in controversy, until two or three weeks after his trust deed from Bertelsmann to him was made to secure the payment of a debt of Bertelsmann to him, and was placed on record ; that the first information he had of it was communicated to him by the witness Blackman. He denied the conversation testified to by the witness Wilborn ; said that he knew the boy Wilborn, when he was with Bertelsmann, but denies that he ever had any such conversation with Bertelsmann, or that Bertelsmann ever told him anything about his owing Cornet, or that he ever had any knowledge that there was a balance due on the land at any time while Wilborn lived with Bertelsmann, or until two or three weeks after he had taken the deed of trust on the land, when he was informed of the matter by the witness Blackman.

This was all of the evidence on the part of defendant, and the foregoing evidence was all of the evidence on the subject of notice on either side. It is insisted by the defendants, that the evidence is not sufficient to authorize or sustain the decree of the court ; that in a case like this, where the defendant denies the notice under oath in a clear and positive manner, in analogy to the rule in chancery requiring the evidence of two witnesses, or the evidence of one witness with strong corroborating circumstances to overturn the sworn answer of the defendant, the same evidence is required and that consequently only one witness in this case, without any corroborating circumstances is insufficient to authorize the decree. This rule which used to prevail in courts of chancery, has no application to the practice under our statute. The plaintiff, under our practice, does not require the defendant to answer under oath, or make discovery in his answer. The defendant is made a competent witness under our statute, and he can be sworn and testify in his own behalf

if he chooses to do so; but it is a matter left to his own discretion. If he is examined as a witness, his evidence takes its place like the evidence of other witnesses, and its weight and credibility are for the consideration of the court or jury, without any reference to the former rule in reference to answers in chancery. (Walton vs. Walton, 17 Mo., 376.) Whether the evidence in the case is sufficient to authorize the decree, is a question to be decided by the court. In this case the question is simply a question of actual notice, as no implied notice is pretended. Mr. Sugden, in his work on "Vendors," in speaking of actual notice, says: "Of actual notice little can be said. It requires no definition and it need only to be remarked, that to constitute a binding notice, it must be given by a person interested in the property and in the course of the treaty for purchase. Vague reports from persons not interested in the property will not affect the purchaser's conscience; nor will he be bound by notice in a previous transaction which he may have forgotten." (2 Sug. Vend., t. p. 537, 538.)

The rule in reference to actual notice may not be so strict in this State, but it has always been held that knowledge of the fact or of facts which will necessarily lead to the discovery of the main fact, must be directly brought home to the party. (1 Sto. Eq., § 399.)

Ordinarily, where a question of fact has been passed on by the court of first instance, and there is evidence on both sides of the question, this court will not interfere unless the decision of the question of fact is clearly erroneous. When this appears in chancery cases this court would not hesitate to reverse the judgment. The evidence in this case offered to prove that defendant Brinker had notice of the vendor's lien in favor of plaintiff, consists in the evidence of a witness who testified to a conversation between Bertelsmann, the purchaser of the land, and the defendant Brinker, two or three years before the same was related by the witness. The witness only recollects about three or four words of the conversation, which he relates to be, that Bertelsmann told Brinker, that .

he (Bertelsmann) "was owing Cornet on that property;" that witness did not hear the amount. This kind of evidence has always been received with great care, and when not supported by other evidence is generally entitled to but little weight.

Mr. Greenleaf in his work on Evidence, when speaking of this class of evidence, remarks as follows: "With all respect to all verbal admissions, it may be observed that they ought to be received with great caution. The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistakes; the party himself either being misinformed or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens also that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement at variance with what the party actually did say. * * * * When we reflect upon the inaccuracy of many witnesses in their original comprehension of a conversation; their extreme liability to mingle subsequent facts and occurrences with the original transaction, and the impossibility of recollecting the precise terms used by the party, or of translating them by exact equivalents, we must conclude there is no substantial reliance upon this class of testimony. The fact, too, that in the final trial of open questions of fact, both sides are largely supported by evidence of this character, in a majority of instances, must lead all cautious triers of fact greatly to distrust its reliability." (1 Greenl. Ev., § 200.)

The foregoing doctrine is fully sustained by this court in the case of Ringo vs. Richardson (53 Mo., 385).

Courts of chancery have always been disposed to place but little reliance upon testimony of loose conversations or confessions of a party when used to overturn a legal title or to prove actual notice where it is positively denied. (Faust vs. Moorman, 2 Car. Ind., 17; Jackson vs. Given, 8 Johns., 137; Hines vs. Dodd, 2 Atk., 276; Flagg vs. Mann, 2 Sumn., 486.)

This rule, which seems to be adopted by courts of chancery, is not adopted because of the want of credibility in the witness, but in consequence of the extreme uncertainty of human recollection, and the inability of the human mind to

detail, after years had elapsed, the exact language used by the parties to a loose conversation. It would be too hazardous to divest titles upon such uncertainties.

The case now under consideration illustrates the reasonableness of the rule, that such evidence should be received with caution. The witness Wilborn, the only witness who testifies to the notice in his examination in chief, states that the language used by Bertelsmann was, "that he was owing Cornet on that property," but that he did not hear the amount; when in his cross-examination he stated that the language was, that "Bertelsmann told Brinker about three years ago, that he was owing Cornet, but did not say how much, nor on what account."

Thus it will be seen that the recollection of the witness differed with itself in a very material matter within the course of a few minutes. This may not be any evidence of the want of sincerity in the witness, but it shows the extreme danger in divesting persons of their title upon the recollection of a loose conversation by a witness two or three years after the conversation took place. We would not be willing to divest a person of a legal right which he had acquired, upon evidence of such uncertainty, where the notice, as in this case, was positively denied by the evidence of the defendant, unless such evidence of the conversation was corroborated by facts clearly pointing to or sustaining the same fact, and particularly where the land had been sold more than five years before the right of the defendant attached, and a deed was made in which the receipt of the consideration money was acknowledged, and the purchaser put in possession of the land, and the deed put on record, so that the purchaser was the apparent owner of the land, and no attempt on the part of the vendor was made, during all this time, in any way to give notice of his vendor's lien on the land.

We think that, taking all of these things into consideration, the evidence of notice was not sufficiently clear to warrant the decree in this case. The judgment will be reversed and the cause remanded. The other judges concur.